UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SYED M. ARIF NAQVI, | ) |
| Plaintiff, | ) |
| v. | ) Civil Case No. 14-01066 (RJL) |
| TURKISH AIRLINES, INC., | ) |
| Defendant. | ) |

FILED
FEB 23 2015
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

MEMORANDUM OPINION
(February 22, 2015) [Dkt. #10]

*Pro se* plaintiff Syed M. Arif Naqvi ("plaintiff") commenced this action against defendant Turk Hava Yollari[1] ("defendant") on June 4, 2014 in the District of Columbia Superior Court, seeking damages for breach of contract and discrimination. *See* Notice of Filing Am. Exh., Exh. A (Superior Court Compl.) ("Compl.") [Dkt. #4-1]. Defendant removed the action to this Court on June 25, 2014. *See* Notice of Removal [Dkt. #1]. Now before the Court is defendant's Motion to Dismiss Plaintiff's Complaint. *See* Turk Hava Yollari A.O.'s Mot. to Dismiss Pl.'s Compl. ("Def.'s Mot.") [Dkt. #10]. Upon consideration of the parties' pleadings, relevant law, and the entire record herein, the Court GRANTS defendant's Motion to Dismiss and DISMISSES this action.

---

[1] Defendant contends that it was incorrectly named as "Turkish Airlines, Inc." in plaintiff's suit. Turk Hava Yollari A.O.'s Mot. to Dismiss Pl.'s Compl. ("Def.'s Mot.") [Dkt. #10]

1

## BACKGROUND

On February 13, 2014, plaintiff and his wife traveled from Washington Dulles International Airport to Istanbul, Turkey on a flight operated by defendant. *See* Compl. ¶ 7. During check-in, plaintiff requested exit row seating. *See* Compl. ¶ 7. Mr. Oyat ("Oyat")—a representative of defendant—informed plaintiff that all of the exit row seats, which were reserved for "Elite Class" passengers, had already been assigned. *See* Compl. ¶ 8. Oyat also allegedly explained that only passengers taller than six feet were assigned to exit rows, and that plaintiff, at six feet tall, was ineligible for such seating. *See* Compl. ¶ 8. Plaintiff initially responded by demanding the return of his luggage, however—after being offered a seat with "leg space"—plaintiff agreed to board the plane. *See* Compl. ¶ 9. When plaintiff boarded the plane, he noticed that all of the exit row seats were occupied by passengers who appeared to be of Turkish descent, six of whom were women under six feet. *See* Compl. ¶ 10. Once seated, plaintiff realized that his seat was not, as Oyat had allegedly promised, a "leg space seat," causing plaintiff great distress. *See* Compl. ¶ 10. This distress was intensified when the crew allegedly violated airline "safety requirements," by failing to both "provide any information regarding safety" and to "illuminate the seat belt signs before landing." *See* Compl. ¶ 12.

Plaintiff claims that defendant's denial of an exit row and "leg space" seat, coupled with the flight staff's purported failure to follow safety protocols, caused him "extreme emotional" distress that manifest in physical malaise and a loss of appetite during the flight. *See* Compl. ¶¶ 11-12. Plaintiff commenced the instant action in D.C. Superior Court on June 4, 2014, alleging breach of contract and discrimination under a

kaleidoscope of federal statutes, including 42 U.S.C. § 1981 and sections 41310(a) and 40127(a) of the Airline Deregulation Act of 1978 ("ADA"). *See* Compl. ¶¶15-22. Defendant removed this action to federal court on June 25, 2014. *See generally* Notice of Removal. Now before the Court is defendant's Motion to Dismiss.

## STANDARD OF REVIEW

The Court may dismiss a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the court must "liberally" construe the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal citation and quotation marks omitted). However, in considering the pleadings, the Court is not required to "accept legal conclusions cast in the form of factual allegations," or to rely on inferences "unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Thus, to withstand dismissal, the allegations, when read in a light most favorable to the plaintiff, must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The same holds true for *pro se* litigants. Although held to "less stringent" standards than licensed attorneys, *pro se* litigants must nonetheless articulate a cognizable claim for relief in order to avoid dismissal. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## ANALYSIS

### I. Preemption Under The Montreal Convention

The touchstone of this Court's analysis must be, and is, the Montreal Convention, a multinational treaty governing the "international carriage" of passengers. *See* Convention for the Unification of Certain Rules for International Carriage by Air Concluded at Montreal art. 1, *opened for signature* May 28, 1999, 2242 U.N.T.S. 309, S. Treaty Doc. No. 106-45 ("Montreal Convention" or "Convention"). The Montreal Convention, which entered into force in the United States on November 4, 2003, updated and replaced "the uniform system of liability for international air carriers previously established by the Warsaw Convention."[2] *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 452 (E.D.N.Y. 2007) (citing *Ehrlich v. Am. Airlines Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004)). Like its predecessor, the "cardinal purpose" of the Montreal Convention is to establish uniform "rules governing the claims arising from international air transportation." *See El Al Isr. Airlines, Ltd. v. Tseng*, 525 U.S. 155, 169 (1999); *see also Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 256 (1984) (noting that the overriding purpose of the Warsaw Convention was to establish a "stable, predictable, and internationally uniform" system of carrier liability).[3] Article 29 of the

---

[2] The "Warsaw Convention" is a reference to the Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11 (1934).

[3] Because "efforts were made in the negotiations and drafting [of the Montreal Convention] to retain existing language and substance of other provisions to preserve judicial precedent relating to other aspects of the Warsaw Convention," the case law interpreting the Warsaw Convention applies with equal force to comparable provisions in the Montreal Convention. *See Baah v. Virgin Atl. Airways Ltd.*, 473 F. Supp. 2d 591, 596-97 (S.D.N.Y. 2007) (quoting S. Exec. Rep. 108-8, at 3 (2003)).

Montreal Convention facilitates this objective by requiring that "any action for damages, however founded . . . can only be brought subject to the conditions and such limits of liability as are set out in this Convention." Montreal Convention, art. 29. Courts applying the Montreal Convention hew to this dictate and routinely find that the Convention, where applicable, preempts state law remedies for claims within its "substantive scope." *See Tseng,* 525 U.S. at 161 ("[R]ecovery for a personal injury suffered 'on board [an] aircraft or in the course of any of the operations of embarking or disembarking,' . . . if not allowed under the Convention, is not available at all.")[4]; *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d at 453 ("[T]he Montreal Convention preempts state law claims falling within its scope.").[5]

The threshold question then, is whether the Montreal Convention applies here. It most assuredly does. The Convention applies to *all* claims arising from "international carriage," broadly defined as "any carriage in which . . . the place of departure and the place of destination . . . are situated either within the territories of two State Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State." Montreal Convention, art. 1 ¶ 2. Plaintiff's journey falls

---

[4] Although the Supreme Court in *Tseng* was construing the Warsaw Convention, because the Warsaw and Montreal Conventions share substantially similar language, courts have construed them as having "substantially the same preemptive effect." *Paradis v. Ghana Airways Ltd.*, 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004).

[5] Plaintiff contends that "the preemptive effect of the Montreal Convention is not so clear." Pl.'s Resp. To Def.'s Mot. To Dismiss Pl.'s Compl. at 3 [Dkt. #11]. Plaintiff is correct that courts are split as to whether the Montreal Convention completely preempts state law for the purposes of establishing federal question jurisdiction under 28 U.S.C. § 1331. However, that is not the issue here. Federal jurisdiction in this action is premised on diversity, and this Court need not evaluate the narrower question of whether the Montreal Convention provides a basis for federal question jurisdiction under 28 U.S.C. § 1331.

within this ambit. He purchased a ticket for a flight originating in the United States—a State Party to the Montreal Convention—with stops in other territories, including Turkey, Egypt, and Pakistan. *See* Decl. of Handan Corekci ¶ 5 [Dkt. #10-2]. His was a journey marked by the prototypical features of "international carriage." Having determined that the Montreal Convention applies, this Court next inquires whether plaintiff's specific claims are preempted by the Convention.

To determine whether a particular claim is preempted by the Montreal Convention's "substantive scope," courts "are directed to look to the Convention's liability provisions." *See King v. Am. Airlines, Inc.*, 284 F.3d 352, 358 (2d Cir. 2002) (citing *Tseng*, 525 U.S. at 171-72). The Convention imposes three categories of strict liability, and where one of these categories applies, it "preempts the remedies of a signatory's domestic law." *See Best v. BWIA W. Indies Airways Ltd.*, 581 F. Supp. 2d 359, 362 (E.D.N.Y. 2008). Compensation for the type of personal injury alleged here is governed by Article 17, which imposes liability for "bodily injury" caused by an "accident" that transpired "on board the aircraft or in the course of any of the operations of embarking or disembarking."[6] *See* Montreal Convention, art. 17 ¶ 1.

More specifically, numerous courts have held that Article 17 preempts federal discrimination claims. This Court, mindful of the Convention's "cardinal" dictate of uniformity, agrees. *See Atia v. Delta Airlines*, 692 F. Supp. 2d 693, 702-03 (E.D. Ky.

---

[6] Although Article 17 limits recovery to passengers that have sustained "bodily injury," the Supreme Court made clear that this restriction does not obviate the Convention's preemptive effect. *See Tseng*, 525 U.S. at 161 (holding that the analogous Article 17 of the Warsaw Convention preempts any action for injury suffered onboard an aircraft regardless of whether bodily injury is alleged).

2010) (holding that plaintiff's discrimination claim was preempted by the Montreal Convention); *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 494-95 (S.D.N.Y. 2009) (same); *see also Kalantar v. Luftansa German Airlines*, 276 F. Supp. 2d 5, 9-10 (D.D.C. 2003) ("While Article 17 does not mention federal statutory or civil rights claims . . . when applicable, the Warsaw Convention preempts statutory discrimination claims."); *Gibbs v. Am. Airlines Inc.*, 191 F. Supp. 2d 144, 148 (D.D.C. 2002) (finding that the Warsaw Convention preempted plaintiff's federal discrimination claims). Plaintiff is thus foreclosed from the profusion of federal discrimination law invoked in his complaint and must seek redress for discrimination under Article 17.[7]

The same is true for plaintiff's breach of contract claim. Although some courts have held that the Montreal Convention does *not* preempt claims of contractual non-performance,[8] other courts, wary of attempts to circumvent the Convention through artful pleading, allow preemption of common law contract claims that are indistinct from

---

[7] Even if the Montreal Convention did not preempt plaintiff's discrimination claims under sections 41310(a) and 40127(a) of the ADA, these claims fail for the separate reason that the ADA does not confer a private right of action. *See Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 522 n.8 (5th Cir. 2002) (stating that because section 40127 of the ADA does not "expressly identify domestic air passengers as a class the Congress intended to benefit," the plaintiff airline passengers could not bring a private right of action against the airline carrier); *see also Dennis v. Delta Airlines, Inc.*, No. 10-CV-973 (DLI)(LB), 2011 WL 4543487, at *5 (E.D.N.Y. Sept. 29, 2011) (noting that section 40127(a) of the ADA "does not confer a private right of action"); *Gibbs v. Am. Airlines, Inc.*, 191 F. Supp. 2d 144, 146 (D.D.C. 2002) (noting that "[s]ection 41310 [of the ADA] does not provide a private cause of action"). *But see Alasady v. Nw. Airlines Corp.*, No. 02-CV-3669 (RHK/AJB), 2003 WL 1565944, at *10 n.13 (D. Minn. Mar. 3, 2003) ("[A] private cause of action might exist for violations of § 40127(a).").

[8] *See, e.g., Nankin v. Cont'l Airlines, Inc.*, No. CV-09-07851 (MMM)(RZx), 2010 WL 342632, at *7 (C.D. Cal. Jan. 29, 2010) (refusing to preempt plaintiff's contract claims where defendant altogether failed to perform on the contract); *Weiss v. El Al Isr. Airlines, Ltd.*, 433 F. Supp. 2d 361, 369 (S.D.N.Y. 2006), *aff'd*, 309 F. App'x 483 (2d Cir. 2009) (same).

plaintiffs' tortious theories of harm. *See Dogbe v. Delta Airlines, Inc.*, 969 F. Supp. 2d 261, 275 (E.D.N.Y. 2013) (finding that plaintiff's breach of contract claim, which was rooted in identical facts as his tort claim, was preempted by the Convention); *see also Carey v. United Airlines*, 255 F.3d 1044, 1052-53 (9th Cir. 2001) (finding that the Warsaw Convention governed, and preempted, claims for emotional distress and breach of contract arising from the same incident). I find the pro-preemption line of cases persuasive in this context. Plaintiff's breach of contract claim is premised on the same discrete set of allegations giving rise to his discrimination claim: (1) defendant's failure to assign him an exit row seat and (2) the misrepresentation that he would be given extra legroom. *See* Compl. ¶¶ 14, 16. These breaches resulted, moreover, in the same injuries caused by plaintiff's alleged discrimination: severe emotional distress, malaise, and loss of appetite. *See* Compl. ¶¶ 10-12. Nowhere does plaintiff allege—nor can he—that defendant altogether failed to perform on the contract. Rather, the gravamen of his contract claim is the purported harm he sustained from *how* the contract was performed. Plaintiff's contract claim is, to put it bluntly, a tort masquerading as a contractual dispute. Stripped of this guise, plaintiff's contract claim is indistinct from his discrimination claims, and must be brought "under the terms of the Convention or not at all." *See King*, 284 F.3d at 357 (citing *Tseng*, 525 U.S. at 161).

## II. Failure To Plead A Claim For Relief

Thus, to survive dismissal, plaintiff must state a cognizable claim for relief under Article 17 of the Montreal Convention. To shoehorn his allegations into an actionable claim, plaintiff must show that: (1) an accident (2) caused him bodily injury (3) either "on

8

board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention, art. 17 ¶ 1. Given that plaintiff's discrimination and breach of contract claims flow from the same factual nexus, I consider them together and conclude that plaintiff has not sustained his burden under Article 17. How so?

The crux of plaintiff's complaint is that he suffered "extreme emotional and physical distress" after defendant refused to assign him either an exit row or a "leg space" seat. *See* Compl. ¶ 11. There is no question, and defendant does not dispute, that these incidents occurred on board the aircraft.[9] Neither of the alleged incidents, however, is an "accident" within the meaning of Article 17. By definition, Article 17 accidents are "unexpected or unusual" events. *See Air France v. Saks*, 470 U.S. 392, 405-06 (1985) (interpreting an analogous provision of the Warsaw Convention). When the alleged injury "results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17" does not apply. *Id.* at 406. Disputes over airline seat assignments are "neither unexpected nor unusual" and an airline's refusal to reassign a passenger's seat is unequivocally *not* an Article 17 "accident." *See Sewer v. LIAT (1974) Ltd.*, Civ. A. No. 04-76, 2011 WL 635292, at *3 (D.V.I. Feb. 16, 2011) (holding that a seating dispute is not an "accident" under Article 17 of the Montreal Convention); *Dogbe*, 969 F. Supp. 2d

---

[9] Courts deciding whether a passenger's injury occurred "on board the aircraft" or during "any operations of embarking" for the purposes of Article 17 look to "(1) the passenger's location at the time of injury; (2) the passenger's activity at the time of the injury; and (3) the degree of control exercised by the airline over the passenger." *See Kalantar*, 276 F. Supp. 2d at 11 (analyzing an analogous provision of the Warsaw Convention). Although the events leading up to plaintiff's denial of a requested seat assignment began at the airline ticket counter prior to boarding, the locus of plaintiff' asserted injuries—"extreme emotional and physical distress"— manifest on board the airline itself. *See* Compl. ¶11. Article 17 therefore governs.

9

at 272 (holding that an airline's refusal to switch a passenger's seat is not an Article 17 "accident"). As such, plaintiff has not pled a cognizable accident under the Montreal Convention.

Nor, for that matter, does plaintiff allege that an actionable "bodily injury" resulted from defendant's purported transgressions. *See* Montreal Convention, art. 17 ¶ 1. Plaintiff claims that defendant's failure to assign him the seat of his choice wrought "extreme emotional and physical distress" that caused plaintiff appetite loss and general malaise. Compl. ¶ 11. This "anxiety" was compounded by defendant's failure to follow certain safety protocols. Compl. ¶ 12. Article 17, however, precludes recovery for standalone mental injuries that do not flow directly from the passenger's physical injury. *See Ehrlich*, 360 F.3d at 376 ("[R]ecovery for mental injuries is permitted only to the extent the [emotional] distress is caused by the physical injuries sustained.") (citations and internal quotation marks omitted). Similarly, Article 17 precludes compensation for physical manifestations of mental injuries. To prevail, a plaintiff's "mental injury must proximately flow from physical injuries caused by the accident." *See In re Aircrash at Little Rock, Ark., on June 1, 1999 (Lloyd)*, 291 F.3d 503, 510 (8th Cir. 2002) (interpreting an analogous provision of the Warsaw Convention). Unfortunately for plaintiff, the "indignity, humiliation, and extreme stress" he alleges may well have adversely impacted

his flight experience, but they are not compensable harms under Article 17, and as such, his claims must fail.[10]

## CONCLUSION

Thus, for all the foregoing reasons, the Court GRANTS defendant's Motion to Dismiss and DISMISSES this action with prejudice. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[10] Plaintiff also demands punitive damages. This demand must, however, fail because Article 29 of the Montreal Convention explicitly precludes recovery for "punitive, exemplary or any other non-compensatory damages." See Montreal Convention, art. 29.